UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHANE N. METZINGER,

                Plaintiff,

v.                                         1:18-CV-1465 (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | JEANNE MURRAY, ESQ.<br>KENNETH HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | DENNIS CANNING, ESQ.<br>ELLIE DOROTHY, ESQ.<br>SERGEI ADEN, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 14.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.     RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1993. (T. 74.) He completed high school. (T. 188.) Generally, Plaintiff's alleged disability consists of post-traumatic stress disorder ("PTSD"), anxiety, and depression. (T. 187.) His alleged disability onset date is July 17, 2014. (T. 74.)

### B. Procedural History

On July 17, 2015, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 74.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On November 7, 2017, Plaintiff appeared before the ALJ, Michael Carr. (T. 31-73.) On February 9, 2018, ALJ Carr issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 7-11.) On October 19, 2018, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 17-26.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 17, 2015. (T. 17.) Second, the ALJ found Plaintiff had the severe impairments of: psychotic disorder, not otherwise specified (NOS), panic disorder with agoraphobia, polysubstance abuse, major depressive disorder, anxiety disorder and mood disorder. (*Id.*) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20

C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 18.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> he can perform simple, routine and repetitive tasks and make simple work-related decisions.  He requires a work environment where change is minimal.  He cannot engage in tandem work.  He can toleration occasional contact with supervisors and coworkers, but must have no contact with the general public.

(T. 19.)  Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 125.)

## II.  THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes three separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to develop the record.  (Dkt No. 9 at 14-19.)  Second, Plaintiff argues the ALJ failed to properly weigh the opinion of Plaintiff's mental health counselor, Betsy Richards, LCSW.  (*Id*. at 19-23.)  Third, and lastly, Plaintiff argues the ALJ mischaracterized the evidence in assessing Plaintiff's subjective complaints.  (*Id*. at 23-27.)  Plaintiff also filed a reply in which he reiterated his original arguments.  (Dkt. No. 13.)

### B. Defendant's Arguments

In response, Defendant makes three arguments.  First, Defendant argues the ALJ properly developed the record.  (Dkt. No. 12 at 14-16.)  Second, Defendant argues the ALJ properly considered Plaintiff's subjective complaints.  (*Id*. at 17-20.)  Third, and

lastly, Defendant argues the ALJ properly considered the opinions of the record. (*Id*. at 20-25.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV. ANALYSIS

5

### A. Duty to Develop the Record

It is well-established Second Circuit law that "the ALJ, unlike a judge in a trial, must himself affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal quotation and citations omitted). The ALJ must fulfill this duty "even when the claimant is represented by counsel." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).

To discharge the duty, the ALJ will develop a complete medical history "for at least the 12 months preceding the month in which [Plaintiff] file[s] [his] application." 20 C.F.R. § 416.912(d)[1]. An ALJ will "make every reasonable effort to help [the plaintiff] get medical reports from [his] own medical sources." *Id*. Every reasonable effort is defined in the regulations as "an initial request for evidence from [the] medical source and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, [the ALJ] will make one followup request to obtain the medical evidence necessary to make a determination." *Id*. § 416.912(d)(1).

Although the ALJ has a duty to develop the record, ultimately it is the plaintiff's burden to "prove to [the Social Security Administration] that [he is] blind or disabled." 20 C.F.R. § 416.912(a). In adhering to this responsibility, the plaintiff must "inform [the Administration] about or submit all evidence known to [him] that relates to whether or not [he is] blind or disabled." *Id.* Furthermore, if there are no "obvious gaps" in the administrative record, the ALJ "is under no obligation to seek additional information in

---

[1] Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs"). Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

6

advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999); *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (ALJ under no obligation to seek additional information from treating source where there were no gaps or deficiencies in the record).

With this context in mind, two issues arise when the duty to develop the record is challenged: (1) whether there was an "obvious gap" in the record that should have prompted the ALJ to seek additional information, *Rosa*, 168 F.3d at 79 n. 5; and (2) whether the ALJ fulfilled his duty by making "every reasonable effort" to fill that gap under 20 C.F.R. §§ 404.1512(d)(1), 416.912(d)(1). *Blackman v. Berryhill*, No. 1:16-CV-00869, 2018 WL 3372963, at *3 (W.D.N.Y. July 11, 2018).

Plaintiff argues the ALJ failed to adequately develop the record by not obtaining mental health treatment records from Michael Cline with Brightside Counseling and from Family Counseling Associates. (Dkt. No. 9 at 14.) Plaintiff asserts the ALJ failed in his duty to develop the record because he was "put on notice" that these records were outstanding, Plaintiff was having difficulty obtaining the records, and there was "no indication that the ALJ made any attempts to obtain these records." (*Id*. at 14-19.)

Contrary to Plaintiff's assertion, the record clearly indicates the Agency attempted to obtain records pursuant to its obligation under the regulations. The Agency requested records from Family Counseling Associates on July 31, 2015, and again on August 10, 2015. (T. 77.) The Agency requested records from Brightside Counseling on September 23, 2015, and again on October 3, 2015. (*Id*.) The record indicates that neither facility returned records. (T. 72, 77.) Therefore, under 20 C.F.R.

§ 416.912(d) the Agency fulfilled its duty to develop a complete medical history "for at least 12 months preceding the month" in which Plaintiff filed his application.

On October 7, 2017, Plaintiff, through counsel, informed the ALJ he was still seeking medical records from Buffalo General Medical Center and Family Counseling Associates. (T. 230.) In a letter dated October 16, 2017, Buffalo General Hospital indicated that they had no records for Plaintiff between 2013 and 2017. (T. 328.) At the hearing on November 7, 2017, Plaintiff's counsel advised the ALJ he would obtain additional records from Buffalo General Medical Center and Family Counseling. (T. 35.) On November 7, 2017, Plaintiff submitted a medical source statement completed by Ms. Richards with Family Counseling Associates; however, there were no treatment notations. (T. 321-327.) On November 21, 2017, Plaintiff's counsel requested that the record be held open for two weeks to obtain records from "Dr. Michael Cline." (T. 232.)[2] On December 5, 2017, December 19, 2017 and January 2, 2018, Plaintiff's counsel again requested that the record be held open for two weeks to obtain records from Mr. Cline. (T. 233, 234, 235.) On January 17, 2018, Plaintiff requested the record be held open for two weeks to obtain records from Buffalo General Medical Center, Mr. Cline, and Family Counseling Associates. (T. 236.) The ALJ issued a written decision on February 14, 2018. (T. 26.) No additional records were submitted to the ALJ, the AC, or this court.

Overall, the ALJ reasonably fulfilled his obligation to develop the record. First, Plaintiff filed his application in 2015 (T. 74) and the ALJ developed Plaintiff's record for

---

[2] According to NYSED Office of the Professions, Michael Cline is a nurse practitioner in psychiatry licensed to practice in New York State.
http://www.nysed.gov/coms/op001/opsc2a?profcd=40&plicno=400736&namechk=CLI (last visited Dec. 16, 2019).

8

"at least the 12 months preceding the month in which [he] file[d] his application." 20 C.F.R. § 416.912. The ALJ requested records from the sources provided to the Administration and further, Plaintiff was represented by counsel at all stages of his application.

Second, the ALJ made "every reasonable effort to help [Plaintiff] get medical evidence from [his] medical sources and entities." 20 C.F.R. § 416.912. The ALJ held the record open three months after the hearing to allow Plaintiff, through counsel, to obtain additional treatment records. As outlined above, Plaintiff submitted additional records after the hearing which the ALJ considered in his determination. Although the additional records did not contain treatment notations from Mr. Cline, Plaintiff did not provide any further comment or request additional assistance from the ALJ; therefore, "it can be presumed that [Plaintiff] felt the records were complete." *Babcock v. Comm'r of Soc. Sec.*, No. 17-CV-6484, 2019 WL 1649347, at *6 (W.D.N.Y. Apr. 17, 2019); *Myers ex rel. C.N. v. Astrue*, 993 F. Supp. 2d 156, 163 (N.D.N.Y. 2012) ("Plaintiff cannot simply identify arguable gaps in the administrative record and claim that such gaps are a *per se* basis for remand [where as here] Plaintiff, through counsel, requested and received additional time to obtain the evidence in question and then failed to produce it without asking for more time or for issuance of a subpoena [and] Plaintiff's counsel submitted additional evidence following the hearing [ . . .] which could have led the ALJ reasonably to conclude that no further records were available or forthcoming."). An ALJ should not be faulted for failing to develop the record, where, as here, the ALJ developed the record pursuant to the regulations, kept the record open for additional

9

records, received additional records, and no further assistance was requested from Plaintiff.

Lastly, the ALJ was not required to develop the record any further because the evidence presented was "adequate for [the ALJ] to make a determination as to disability." *Janes v. Berryhill*, 710 F. App'x 33 (2d Cir. 2018) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996). Here the record contained treatment notations, medical source statements, a consultative examination and opinion, and hearing testimony.

### B. Subjective Complaints

The ALJ must employ a two-step analysis to evaluate a plaintiff's reported symptoms. *See* 20 C.F.R. § 416.929; SSR 16-3p. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Id*. § 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the plaintiff's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the plaintiff's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the plaintiff receives or has received to relieve his pain or other symptoms; (6) any measures that the plaintiff takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning plaintiff's functional

limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vii).

Here, the ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effect of those symptoms were not entirely consistent with the medical evidence and other evidence in the record "for the reasons explained in this decision." (T. 20.)

Plaintiff asserts the ALJ "overstated and mischaracterized Plaintiff's ability to socialize and perform activities of daily living despite his very limiting mental health conditions." (Dkt. No. 9 at 23.) Plaintiff further asserts that his limited activities "no way equate to full-time, consistent work." (*Id*. at 26.)

First, a review of the record and the ALJ's decision undermine Plaintiff's argument that the ALJ overstated and mischaracterized Plaintiff's activities. The ALJ accurately summarized Plaintiff's hearing testimony. (T. 20, 22, 24.) Second, the ALJ did not conclude Plaintiff's limited ability to undertake normal daily activities demonstrated his ability to work, rather, the ALJ properly discounted Plaintiff's testimony regarding his symptoms to the extent that they were inconsistent with other evidence. In assessing Plaintiff's subjective complaints, the ALJ also noted objective medical observations, treatment Plaintiff received for his mental health impairments, medication Plaintiff utilized, and opinion evidence. (T. 20-24.)

Overall, the ALJ did not mischaracterize or overstate Plaintiff's activities. The ALJ properly considered Plaintiff's activities as one factor in his overall assessment of Plaintiff's subjective complaints. Further, the ALJ did not conclude Plaintiff could

11

perform the mental demands of work based solely on Plaintiff's reported limited activities. As outlined further herein, the ALJ properly relied on medical opinion evidence, together with other evidence in the record, in formulating Plaintiff's mental RFC. Therefore, the ALJ did not err in his assessment of Plaintiff's subjective complaints.

    **C.    RFC and Opinions**

The RFC is an assessment of "the most [Plaintiff] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id*. §§ 416.927(d), 416.945(a)(3), 416.946(c). The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. *Id*. § 416.927(c)(1)-(6). Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity. *Id*. §§ 416.912(c), 416.927(e)(2), 416.945(a), 416.946(c).

On October 30, 2017, Ms. Richards completed a "Physical Treating Medical Source Statement" form. (T. 322-326.) Ms. Richards indicated Plaintiff had "severe anxiety in most social settings." (T. 322.) She indicated Plaintiff's symptoms were severe enough to "constantly" interfere with attention and concentration needed to perform even simple work. (T. 323.) She indicated Plaintiff was incapable of even low

stress jobs. (*Id*.) She indicated Plaintiff would need to shift positions at will "due to anxiety." (T. 324.) She indicated Plaintiff would "frequently" take unscheduled breaks. (*Id*.) She wrote that Plaintiff's anxiety symptoms "increase significantly when forced to have to function outside of the home environment." (T. 327.) She opined Plaintiff was "incapable of being able to function in any work environment." (*Id*.)

The ALJ afforded Ms. Richards's statement "little weight." (T. 23.) The ALJ reasoned the social limitations provided were inconsistent with Plaintiff's testimony and objective mental status examinations which revealed "greater social contacts than what was purported." (*Id*.) The ALJ also noted Ms. Richards was not an acceptable medical source. (*Id*.)

Plaintiff argues the ALJ failed to properly evaluate Ms. Richards's statement because he "simply discounted it because she was not an acceptable medical source and because Plaintiff's testimony and mental status examinations were 'inconsistent,' though the ALJ failed to cite to specific instances of inconsistencies." (Dkt. No. 9 at 22.) Plaintiff also asserts the ALJ could not properly evaluation her statement because the record was not complete. (*Id*.)

As noted by the ALJ, Ms. Richards is not an acceptable medical source. There are five categories of "acceptable medical sources." 20 C.F.R. § 416.913(a). Licensed social workers are not listed as an acceptable medical source. *See id.* Thus, a licensed social worker cannot be a treating medical source and cannot give "medical opinions." *Wider v. Colvin*, 245 F.Supp.3d 381, 389 (E.D.N.Y. 2017). Nevertheless, an ALJ should consider evidence from "other sources," such as social workers, on important issues like the severity of an impairment and any related functional effects. *See* SSR 06-3p, 2006

WL 2329939 (S.S.A. Aug. 9, 2006). An ALJ may not disregard opinion evidence from an "other source" solely because it was not authored by an acceptable medical source. *See Canales v. Comm'r of Soc. Sec.*, 698 F.Supp.2d 335, 344 (E.D.N.Y. 2010) (holding that ALJ erred in disregarding opinion of social worker simply because it was the opinion of an "other source," and "not on account of its content or whether it conformed with the other evidence in the record").

First, although the ALJ noted Ms. Richards was a social worker and not an acceptable medical source, he did not reject her statement based on that alone. (T. 23.) Second, in his discussion of Ms. Richards statement the ALJ did not cite specific evidence in the record of inconsistencies; however, the ALJ's reasoning can be easily gleaned from the record. *See Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983)) ("An ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision.").

After the ALJ outlined and weighed Ms. Richards's statement, he proceeded to discuss Plaintiff's ability to perform the basic demands of mental work and provided specific citations to the record to support his conclusions. (T. 23.) For example, the ALJ noted Plaintiff's:

> poor concentration and focus at examinations, history of marijuana use, motor restlessness, fatigue and racing thoughts, but average cognitive functioning, coherent and goal directed thought processes, and ability to remember three out of three objects immediately and after a delay recite digits forwards and backwards, perform one and two-step calculations and perform serial subtraction exercises limits him to performing simple, routine, and repetitive tasks, making simple work-related decisions and working in an environment where change in minimal as he does not possess the

14

mental capacity and stress tolerance levels to handle complex, novel or fast paced tasks during the course of a normal workday due [to his mental impairments.]

(T. 23, citing 248-249, 252, 262, 269-270, 274, 276, 279-280, 282, 327.) The ALJ provided a similar analysis of Plaintiff's ability to perform the social demands of work. (T. 23-24.) Therefore, contrary to Plaintiff's assertion, the ALJ cited specific evidence in the record to support his determination that Plaintiff's mental functioning was not as limited as Ms. Richards opined.

In addition, the record contained an examination and medical source statement from consultative examiner Susan Santarpia, Ph.D. (T. 260-264.) Dr. Santarpia opined Plaintiff was able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, and appropriately deal with stress within normal limits. (T. 263.) She further opined Plaintiff had "mild to moderate impairment" in learning new tasks, performing complex tasks independently, making appropriate decisions, and relating adequately with others. (*Id*.) Non-examining State agency medical consultant, Dr. Juriga reviewed the record in 2015 and opined Plaintiff was capable of performing "simple tasks." (T. 79.) Dr. Juriga further opined Plaintiff's ability to deal with co-workers and the public "would be somewhat reduced, but adequate to handle only brief and superficial contact" and his "ability to tolerate and respond appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision in the customary work settings." (T. 79.)

The ALJ afforded the opinions of Drs. Santarpia and Juriga "partial weight" due to their consistency with Plaintiff's treatment and response to treatment. (T. 23.) The

ALJ's RFC, limiting Plaintiff to no contact with general public, contained greater social restrictions than opined by Drs. Santarpia and Juriga. (T. 19.) Overall, the ALJ did not err in his assessment of Ms. Richards's statement and the ALJ's RFC determination was supported by substantial evidence in the record, namely the medical opinions of Drs. Santarpia and Juriga and other objective evidence in the record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: December 26, 2019

_/s/ Bill Carter_
William B. Mitchell Carter
U.S. Magistrate Judge